**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Haire,<br><br>            Plaintiff,<br><br>v.<br><br>Liberty Insurance Corporation,<br><br>            Defendant. | No. CV-20-00686-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff Brian Haire's ("Plaintiff") motion to remand. (Doc. 8.) For the following reasons, the motion will be denied.

**BACKGROUND**

On February 25, 2020, Plaintiff initiated this action by filing a complaint in Maricopa County Superior Court. (Doc. 1-3 at 2-9.)

The complaint alleges that Plaintiff held a homeowner's insurance policy issued by Defendant Liberty Insurance Corporation ("Defendant"), that Plaintiff's property "sustained at least $31,115.91 in damage as a result of . . . wind and hail damage," and that, when Plaintiff sought reimbursement for this loss, Defendant "conducted a substandard investigation," "wrongfully refused to participate in [an] appraisal," caused Plaintiff to "jump through additional unnecessary hoops." and ultimately "failed to pay [Plaintiff] all of the benefits owed under the terms of the policy." (*Id.* ¶¶ 2-5, 18, 22, 44-45.) The complaint alleges this conduct caused Plaintiff to suffer both "pecuniary damages and emotional distress." (*Id.* ¶ 21.) The complaint asserts claims for breach of contract (Count

One) and breach of the implied duty of good faith and fair dealing (Count Two) and seeks relief in the form of declaratory judgment, compensatory and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01, and punitive damages.  (*Id.* at 6-8.)

At the same time Plaintiff filed his complaint, Plaintiff also completed and filed a "Civil Cover Sheet." (Doc. 1-3 at 17-19.)  Among other things, this sheet required Plaintiff to specify "the discovery tier to which the pleadings allege the case would belong under [Arizona Rule of Civil Procedure] 26.2." (*Id.* at 17.)  Plaintiff checked the "Tier 3" box. (*Id.*)

On April 7, 2020, Defendant removed this action to federal court.  (Doc. 1.)  The removal petition asserts that subject-matter jurisdiction exists "pursuant to the provisions of 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy herein exceeds the sum of $75,000, exclusive of interest and costs." (*Id.* ¶ 8.)

On April 21, 2020, Plaintiff filed a motion to remand for lack of subject-matter jurisdiction, asserting that Defendant has not demonstrated that the amount in controversy exceeds $75,000. (Doc. 8.)

On May 5, 2020, Defendant filed a response and supporting evidence. (Doc. 8.)

Plaintiff did not file a reply.

## ANALYSIS

I. <u>Legal Standard</u>

"A defendant generally may remove any action filed in state court if a federal district court would have had original jurisdiction." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citing 28 U.S.C. § 1441(a)).  A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are diverse.  28 U.S.C. § 1332(a).   The amount in controversy is the "amount at stake in the underlying litigation," which comprises "any result of the litigation, excluding interests and costs, that

entails a payment by the defendant," including "*inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Gonzales*, 840 F.3d at 648-49 (internal quotation marks and citations omitted).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* (quotation omitted). If "damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory threshold] when federal jurisdiction is challenged." *Id.*[1] "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

There is a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).[2] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). *See* also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where doubt regarding the right to removal exists, a case should be remanded to state court.").

…

…

---

[1] In contrast, a removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

[2] The "strong presumption" against removal in "mine-run diversity cases" was not altered by *Dart*, which addressed removal of class actions under the Class Action Fairness Act. *Dart*, 574 U.S. at 89. *See generally Johnson v. Twin City Fire Ins. Co.*, 2015 WL 1442644, *2 n.2 (D. Ariz. 2015).

II.     The Complaint

The complaint does not state the amount of damages sought or specify the amount in controversy. As noted, the complaint alleges that Plaintiff's property "sustained at least $31,115.91 in damage as a result of . . . wind and hail damage"; that Defendant breached the parties' insurance contract in bad faith by "fail[ing] to pay [Plaintiff] all of the benefits owed under the terms of the policy"; that Plaintiff was additionally "forced to secure an independent property damage assessment"; that Plaintiff is entitled to damages for "emotional distress" on top of his pecuniary damages; and that Plaintiff is also entitled to punitive damages, attorneys' fees, interest, and costs.

Because "it is not facially evident from the complaint that more than $75,000 is in controversy," and the parties dispute whether it is, Defendant "must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson*, 319 F.3d at 1090.

III.    The Evidence

Defendant identifies six categories of evidence or reasons that, in the aggregate, establish that the amount in controversy exceeds $75,000: (1) Plaintiff's "recent" disclosure of "an estimate purportedly showing that the costs to repair the alleged property damage totals $61,157.38," which makes it "evident that Plaintiff is seeking more than $60,000 in contract damages alone" (Doc. 13 at 2; Doc. 13-1 [actual estimate]); (2) "jury verdicts in similar cases" (Doc. 13 at 4-6); (3) Plaintiff's initial designation of this case as a "Tier 3" case in Maricopa County Superior Court, which Defendant views as an implicit concession that Plaintiff "views his case as having an amount in controversy exceeding $300,000.00 in compensatory damages alone" (*id.* at 6-7); (4) Plaintiffs' counsel's refusal to stipulate that Plaintiffs' damages do not exceed $75,000 (*id.* at 7-8); (5) Plaintiff's demand for attorneys' fees, which, in Defendant's view, should be valued as at least 25% of the amount of compensatory damages being sought (*id.* at 8-9); and (6) Plaintiff's demand for punitive damages, which, in Defendant's view, should be valued at more than $75,000 (*id.* at 10-11).

As explained below, the Court agrees that the first three categories of evidence establish that the amount in controversy exceeds $75,000. Thus, the Court will deny the motion to remand without addressing the remaining arguments.

### A.     Contract Damages (Count One)

From the face of the complaint, it appears that Count One seeks contract damages of less than $31,115.91 (the estimated amount of property damage, described in the complaint as "at least $31,115.91," minus the unidentified amount Defendant has already paid). (Doc. 1-3 ¶¶ 2-5, 18, 22.) However, Defendant proffers evidence that, following the initiation of this lawsuit, Plaintiff disclosed a new property-damage estimate. (Doc. 13-1.) According to Defendant, this estimate shows that "Plaintiff is seeking more than $60,000 in contract damages alone." (Doc. 13 at 2.)

The estimate provides a detailed breakdown and lists the replacement cost value ("RCV") as $61,147.38 and the actual cost value ("ACV") as $55,445.06. (Doc. 13-1 at 15.) Defendant did not provide any evidence that the insurance contract allows Plaintiff to recover the RCV, as opposed to the ACV. Nor did Defendant provide any evidence (or even any assertion) as to how much Plaintiff already received pursuant to the insurance contract. However, from Defendant's conclusion that "Plaintiff is seeking more than $60,000 in contract damages alone" (Doc. 13 at 2), the Court can infer that Defendant previously paid Plaintiff less than $1,147.38.

Plaintiff did not file a reply rebutting this inference, so the Court accepts Defendant's evidence as proof that Count One seeks breach-of-contract damages exceeding $31,115.91. Because Defendant has not provided any evidence as to whether Defendant owes Plaintiff the ACV or the RCV under the insurance contract, the lesser of the two values, $55,445.06—minus $1,147.38 (the Court's assumption as to the unidentified amount Defendant already paid Plaintiff)—is the most that Defendant has proved by a preponderance of the evidence. Thus, the Court will apply $54,297.68 toward the amount in controversy.

…

### B. Bad Faith Tort Damages (Count Two)

Count Two asserts a claim for breach of the implied covenant of good faith and fair dealing. The claim is different from the breach-of-contract claim asserted in Count One and could result in the recovery of additional categories of damages. *See generally Rawlings v. Apocada*, 726 P.2d 565, 575-76 (Ariz. 1986) ("Tort actions for breach of covenants implied in certain types of contractual relationships are most often recognized where the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from the defendant . . . [such as when] dealing with . . . an insurer . . . . These types of contracts create special, partly noncommercial relationships, and when the provider of the service fails to provide the very item which was the implicit objective of the making of the contract, then contract damages are seldom adequate, and the cases have generally permitted the plaintiff to maintain an action in tort as well as in contract."). To prove the value of Count Two, Defendant provides what it describes as a survey of "jury verdicts in similar cases" to show that "other cases in Arizona involving claims of insurance bad faith . . . almost always have a value exceeding $75,000." (Doc. 13 at 4.)

Under Ninth Circuit law, a removing defendant seeking to establish that the amount in controversy exceeds the jurisdictional threshold may point to verdicts and settlements in "similar" cases. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("In determining the amount in controversy, the district court properly considered . . . emotional distress damage awards in similar age discrimination cases in Washington."). Unfortunately, the law is not a model of clarity on what "similar" means in this context.

This lack of clarity has caused district courts within the Ninth Circuit to reach conflicting results concerning the nature of the required similarity showing. On one end of the spectrum, some courts have held that "the cases must be factually identical or, at a minimum, analogous to the case at issue." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012). *See also Rybalnik v. Williams Lea Inc.*, 2012 WL 4739957, *3 (C.D. Cal. 2012) ("[M]erely pointing to cases where juries have awarded hefty

- 6 -

damages sums in the past without further explanation (by facts or evidence) how the facts in those cases compare to the facts presented here is entirely insufficient to meet [the removing defendant's] burden to establish the amount in controversy by a preponderance of the evidence."). Other courts have applied a more relaxed definition of similarity. *See, e.g., Avila v. Kiewit Corp.*, 2019 WL 4729641, *2-3 (C.D. Cal. 2019) ("The question . . . is just how factually analogous the cases on which Defendant relies must be. . . . [O]verall, district courts appear to require only 'analogous' or even 'similar' examples before considering jury verdicts for the amount in controversy analysis."). And in a recent unpublished decision, the Ninth Circuit seemed to suggest that an even more relaxed standard applies, which can be satisfied simply by pointing to another case that involved the same cause of action. *Republic Bag, Inc. v. Beazley Insurance Company*, 804 Fed. App'x 451, 452-53 (9th Cir. 2020) ("The district court did not err in holding that Beazley showed by a preponderance of the evidence that the value of the . . . lawsuit exceeds the jurisdictional minimum. First, Beazley produced evidence of jury verdicts far above the jurisdictional minimum in cases filed in California superior court with *similar causes of action* . . . . The court could properly consider those verdicts.") (emphasis added).

Here, it is not necessary to wade into the debate because one of the cases cited in Defendants' brief, *Simms v. State Farm Fire & Casualty Co.*, 2006 WL 4551856 (D. Ariz. 2006), involved a nearly identical set of facts. There, a homeowner asserted a bad-faith claim against his insurer after he sustained $41,000 of property damage during a fire and his insurer refused to provide full reimbursement. *Id.* The case resulted in a $100,000 damage award on the bad-faith claim on top of a $41,000 damage award on the breach-of-contract claim. *Id.* Here, similarly, Plaintiff is a homeowner who asserts that his insurer failed, in bad faith, to provide coverage for $54,297.68 in property damage sustained during a hail storm. These circumstances are "factually identical or, at a minimum, analogous to" *Simms*. *Mireles,* 845 F. Supp. 2d at 1055. Thus, Defendant has provided evidence that Count Two may be valued at $100,000. *See also Love v. Safeco Inc.*, 2019 WL 3229222, *2 (D. Ariz. 2019) (identifying "a series of Arizona cases . . . in which the plaintiff was

awarded bad faith damages . . . rang[ing] from $100,000 to $155,000," two of which "involved bad faith claims in the context of home insurance policies," and concluding those cases were sufficient to support removing defendant's claim that amount-in-controversy threshold was satisfied). Finally, although a high jury verdict from one case with similar facts[3] is potentially refutable evidence, Plaintiff failed to provide any controverting evidence suggesting *Simms* was an outlier. Thus, Defendant has established by a preponderance of the evidence that the amount in controversy for Count Two is $100,000.

With—or even without—the $54,297.68 valuation of Count One, this easily establishes that the amount of controversy in this action—even before considering Plaintiff's claims for attorneys' fees, costs, and punitive damages—exceeds the $75,000 jurisdictional threshold.

**C.     Tier 3 Designation**

In an abundance of caution, the Court will also address the relevance of the "Civil Cover Sheet" that Plaintiff filled out when filing this action in state court, because its relevance is bound up with the conclusions reached in Parts A and B above.

The cover sheet has a section entitled "Rule 26.2 Discovery Tier Or Monetary Relief Claimed." (Doc. 1-3 at 17.) The directions for this section are as follows: "State the monetary amount in controversy or place an 'X' next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2." (*Id.*) In this case, Plaintiff left the "amount claimed" space blank and placed an "X" in the box for Tier 3. (*Id.*)

Rule 26.2 of the Arizona Rules of Civil Procedure is entitled "Tiered Limits to Discovery Based on Attributes of Cases." In general, "[t]his rule explains how much

---

[3] Other cases cited by Defendant are less similar. In one case, the insurance company denied treatment on a worker's compensation claim, such that the plaintiff's surgery was delayed 20 months, resulting in permanent damage to the plaintiff's physical health. In another, an auto insurer was accused of having the deceptive practice of offering the wholesale value of a car, rather than the actual cash value, such that the amount each insured was underpaid was small enough that the average insured could not fight it. Unfortunately, none of the cases cited included an explanation regarding the underlying facts. This left the Court to do a fair amount of digging on its own. Although the citation to *Simms* carries the day in this case, Defendant's brief could have done more to help the Court reach this conclusion.

discovery a party may take in their case. The amount of discovery a party may take is limited by the tier to which their case is assigned. . . . [C]ases are assigned to one of three tiers, each of which has different limits." *See* Ariz. R. Civ. P. 26(a). Subdivision (c) of Rule 26.2 explains the process for assigning a case to a particular tier. It explains that "[t]he tier to which a case is assigned is determined by . . . (1) stipulation or motion, for good cause shown; (2) placement by the court based on the characteristics of the case; or (3) the sum of the relief sought in the complaint, and any counterclaims or crossclaims." *Id.* When a case is not assigned to a tier based on the first two methods (*i.e.,* stipulation/motion or *sua sponte* assignment by the court), it is "deemed to be assigned a tier based on the damages claimed in the action." *See* Ariz. R. Civ. P. 26(c)(3). The term "damages," in turn, is defined as including "all monetary damages sought (without duplication for alternative theories) by all parties in all claims for relief in the original pleadings, but exclud[ing] claims for punitive damages, interest, attorney's fees in the case to be tiered, and costs." *See* Ariz. R. Civ. P. 26(e). "Actions claiming $50,000 or less in damages" fall within Tier 1, "[a]ctions claiming more than $50,000 and less than $300,000 in damages" fall within Tier 2, and "[a]ctions claiming $300,000 or more in damages" fall within Tier 3. *See* Ariz. R. Civ. P. 26(c). Critically, "[f]rom the filing of the complaint until a court assigns a case to a different tier, the case is deemed to be assigned to the tier to which it would be assigned based on its monetary or nonmonetary relief requested under Rule 26.2(c)(3)." Ariz. R. Civ. P. 26.2(d)(1).

With this backdrop in mind, Defendant urges the Court to "consider Plaintiff's Tier 3 designation . . . as the reasonable assumption . . . that [Plaintiff] views his case as having an amount in controversy exceeding $300,000.00 in compensatory damages alone, not including his claims for exemplary damages, interest, and attorney's fees." (Doc. 13 at 7.) Meanwhile, Plaintiff's motion asserts—in seeming anticipation of this argument—that "[t]he discovery tier requested does not establish an amount in controversy" because "as most Arizona attorneys will acknowledge, Arizona Rule of Civil Procedure 26.2 'explains how much discovery a party may take in their case[,'] but ultimately that amount of

discovery is determined by stipulation of the parties or determination by the court." (Doc. 8 at 4.)

Defendant has the better side of this argument. Although Plaintiff is correct that, under Rule 26.2., a tier placement may be accomplished by stipulation of the parties, by motion, or by judicial determination, this observation is a *non sequitur* because it doesn't address why Plaintiff chose to check the "Tier 3" box in the first place. As noted, Rule 26.2(c)(3) provides that yet another method for making a tier assignment is via "the damages claimed in the action," with Tier 3 reserved for cases involving claims for at least $300,000. Moreover, Rule 26(d)(1) provides that at the time the complaint is filed—that is, before a stipulation or motion could be granted or a *sua sponte* assignment made—the only proper basis on which to make a tier designation is the "monetary or nonmonetary relief requested under Rule 26.2(c)(3)." Plaintiff's decision to check the Tier 3 box is, therefore, at least some evidence that Plaintiff valued his damages at $300,000 or more. This inference is bolstered by the fact that, as discussed in Parts A and B above, it is logical to view an Arizona bad-faith action against the issuer of a homeowner's insurance policy, where the contract damages alone exceed $50,000, as seeking damages measured in six figures. Finally, although there might be other explanations for Plaintiff's decision to check the Tier 3 box, Plaintiff's curious decision not to file a reply (or submit any evidence in support of his removal motion, such as a declaration from counsel explaining why the Tier 3 box was checked) means this inference has not been overcome.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to remand (Doc. 8) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorneys' fees is **denied**.

Dated this 28th day of August, 2020.

Dominic W. Lanza
United States District Judge